## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STEPHEN H. ROBIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD J. ROBIN, ERIC C. KANT, | ) |
| ROBIN REALTY AND MANAGEMENT | ) |
| COMPANY, an Illinois corporation, | ) |
| ROBIN CONSTRUCTION CORPORATION, | ) |
| an Illinois corporation, HOWARD SHAPIRO, | ) |
| and COSMOPOLITAN BANK AND TRUST | ) |
| COMPANY, as Trustee under Trust No. 7620, | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**

NOV 1 3 2002

02C 8181

JUDGE GETTLEMAN

**JURY DEMANDED**

**MAGISTRATE JUDGE
GERALDINE SOAT BROWN**

## COMPLAINT FOR FRAUD, BREACH OF FIDUCIARY DUTY, DISSOLUTION OF JOINT VENTURE, ACCOUNTING, AND OTHER RELIEF

Plaintiff Stephen H. Robin ("Stephen"), by his attorneys Chuhak & Tecson, P.C., for his complaint against defendants Richard J. Robin ("Richard"), Eric C. Kant ("Kant"), Robin Realty and Management Company ("Robin Realty"), Robin Construction Corporation ("Robin Construction"), Howard Shapiro ("Shapiro"), and Cosmopolitan Bank and Trust Company, as Trustee under Trust No. 7620 (the "Trust"), states as follows:

### NATURE OF THE ACTION

1. This lawsuit arises out of a joint venture between Stephen, his brother Richard, and Kant to own, operate, and share in the profits from commercial real property commonly known as the Green Oaks Shopping Center ("Green Oaks") in Oak Lawn, Illinois. Richard, Kant, and Shapiro, the joint venture's accountant, have engaged in a plan to defraud Stephen and deprive him of his rights and interests in Green Oaks; have breached their fiduciary duties to Stephen and the Green Oaks joint venture by siphoning funds from the joint venture to Robin Realty and/or Robin Construction, companies they control, without Stephen's knowledge or consent; have failed to provide Stephen access to the joint venture's books and records despite numerous and repeated demands that they do so;

and have withheld from Stephen his share of the profits of the joint venture, which amounts to hundreds of thousands of dollars. As a result of defendants' wrongful conduct, Stephen is seeking an accounting and dissolution of the joint venture, including the sale of the Green Oaks property, and the recovery of damages.

### PARTIES

2.      Plaintiff Stephen Robin is an individual residing in Scottsdale, Arizona and is a citizen of the State of Arizona.

3.      Defendant Richard Robin is an individual residing in Chicago, Illinois and is a citizen of the State of Illinois.

4.      Defendant Eric Kant is an individual residing in Wilmette, Illinois and is a citizen of the State of Illinois.

5.      Defendant Robin Realty is an Illinois corporation with its principal place of business located at 1333 North Wells Street, Chicago, Illinois.

6.      Defendant Robin Construction is an Illinois corporation with its principal place of business located at 1333 North Wells Street, Chicago, Illinois.

7.      Defendant Shapiro is a citizen of the State of Illinois whose principal place of business is located in Northbrook, Illinois.

8.      Defendant Cosmopolitan Bank and Trust Company, as Trustee under Trust No. 7620, is an Illinois corporation and all times relevant hereto held title to the real property located at 95th Street and Cicero Avenue, Oak Lawn, Illinois , commonly known as the Green Oaks shopping center (the "Property").

### JURISDICTION AND VENUE

9.      Subject matter jurisdiction in this case exists pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(1) and (2), in that all defendants reside in this District, the events giving rise to these claims occurred in this District, and the property that is the subject of this action is situated in this District.

## FACTS COMMON TO ALL COUNTS

11. Prior to January 1, 1984, Albert A. Robin, Stephen and Richard's father, was the sole holder of the beneficial interest in the Trust that held title to the Property.

12. The Green Oaks Shopping Center was built on the Property in approximately 1958. Green Oaks is a commercial shopping center with approximately 31 retail spaces and, upon information and belief, has continuously operated as a commercial shopping center since it was constructed.

13. Upon information and belief, prior to January 1, 1984 leasing and management services for Green Oaks were provided by Robin Realty and/or Robin Construction (collectively, the "Robin Companies"). Such services included, but were not limited to, the maintenance, leasing, repair and improvement of Green Oaks and the Property, as well as the collection of rents and other income received from the operation and leasing of Green Oaks.

14. Upon information and belief, prior to January 1, 1984, other than reimbursement of actual expenses incurred, neither of the Robin Companies, which were then owned and operated by Albert Robin, received management fees or other compensation for providing the aforementioned services, and no management agreement or other written contract regarding the Robin Companies' management services was ever prepared or executed. This was consistent with the pattern and practice of Albert Robin and the Robin Companies. Albert Robin owned and operated numerous other commercial properties, and upon information and belief, the Robin Companies did not receive management fees or other compensation for the services they provided to those properties. Similarly, Stephen managed other commercial properties owned by the Robin family and did not charge any management fees for his services.

15.     Prior to January 1, 1984, the Robin Companies remitted profits from the operation of Green Oaks to Albert Robin as holder of the beneficial interest in the Property. Upon information and belief, the Robin Companies provided Albert Robin, upon his request, with regular accountings and financial statements regarding the operation of Green Oaks, and Albert Robin had access to the books and records of Green Oaks.

16.     On or about January 1, 1984, Albert Robin assigned his beneficial interest in the Trust to his sons. Pursuant to the assignment, a true and correct copy of which is attached hereto as Exhibit A, Stephen and Richard were each granted an undivided 50% interest in the Trust. Furthermore, the assignment provided that the power of direction under the Trust was to be exercised by "Stephen H. Robin and Richard J. Robin, jointly, or Albert A. Robin, singly."

17.     On or about the same date that Albert Robin assigned his beneficial interest in the Trust to his sons, Richard executed an assignment pursuant to which he granted Kant "an undivided twenty-five (25%) interest in the entire Trust corpus which is one-half of [Richard's] fifty (50%) interest" in the Trust. A true and correct copy of the assignment granting Kant a 25% interest in the Trust is attached hereto as Exhibit B.

18.     At the time Stephen, Richard, Kant acquired their interests in the Property, it was their purpose and intent to own the Property and operate Green Oaks as a joint venture for their mutual benefit.

19.     Beginning in January, 1984, when they acquired their beneficial interests in the Property, Stephen, Richard, and Kant owned and operated Green Oaks and the Property as a joint venture in which all three, proportional to their interests in the Property, shared in the profits, losses, and tax benefits generated by Green Oaks, and all three had a right, proportional to their interests in the Property, to direct and control the management and disposition of the Property and Green Oaks.

20.     Until approximately the early 1990's, one or both of the Robin Companies, which continued to manage the operation of Green Oaks as they had while Albert Robin held the beneficial interest in the Property, would on a regular basis remit to Stephen, Richard, and Kant the profits derived from the operation and leasing of Green Oaks, proportional to their interests in the Property. The Robin Companies, which were still being primarily run by Albert Robin, did not deny to any parties to the Green Oaks joint venture access to the books and records of Green Oaks, and would, upon request, provide accountings and financial statements to the three joint venturers and owners of the Property.

21.     At all times during the existence of the Green Oaks joint venture and continuing through the present, Richard and Kant were employees of the Robin Companies. At some point at least as early as the early 1990's, Richard and Kant assumed primary responsibility for the Robin Companies' operations, including the operation and management of Green Oaks.

22.     Upon information and belief, shortly after acquiring operational control of the Robin Companies in the early 1990's, Richard and Kant embarked on a plan to deprive Stephen of his rights and interest in the Property and the Green Oaks joint venture, while simultaneously diverting profits from the joint venture to themselves.

23.     Specifically, Richard and Kant, without the knowledge or consent of Stephen, and contrary to the pattern and practice of the Robin Companies as to family owned properties, began to deduct from the profits of Green Oaks a "management fee" purportedly deriving from the services the Robin Companies provided for Green Oaks. Upon information and belief, the "management fee" constituted approximately 4% of the annual revenue of Green Oaks. Upon information and belief, Richard and Kant charged the joint venture a "management fee" of $51,051 on revenues of $1,348,683 in 1999, and $58,468 on revenues of $1,407,677 in 2000.

24.     The foregoing figures were set forth in a redacted, incomplete Financial Report for Green Oaks dated December 31, 2000 and prepared by Shapiro, who at all relevant times has been the accountant retained by Green Oaks to provide accounting services for the joint venture. A copy of the December 31, 2000 Financial Report is attached hereto as <u>Exhibit C</u>. By its own terms, the Financial Report omitted material information and figures, and Shapiro only provided complete financial information regarding Green Oaks to Richard and Kant, while denying same to Stephen.

25.     Despite Stephen's numerous written and oral requests for financial information relating to Green Oaks, the December 31, 2000 Financial Report constitutes the last financial information Stephen has received regarding Green Oaks. Since that time, Richard and Kant, notwithstanding Stephen's 50% interest in the Property and Green Oaks joint venture, have denied him access to all the books and records of Green Oaks. Richard and Kant have also failed and refused to provide Stephen an accounting as to their joint venture, despite his demands.

26.     Stephen has also requested that Shapiro, the joint venture's accountant, provide full financial statements and complete financial information regarding Green Oaks, but Shapiro has failed and refused to do so.

27.     Upon information and belief, Richard and Kant continue to charge the joint venture a "management fee" without the approval and consent of Stephen and without advising Stephen of the exact amount of said fees. Furthermore, upon information and belief, Richard and Kant have been diverting more funds from the joint venture by taking "commissions" from the joint venture's profits ostensibly for their efforts in leasing Green Oaks.

28.     Additionally, in or about early 2002, Richard and Kant, without the knowledge or consent of Stephen, committed to expend over $1.1 million of the joint venture's assets towards "improvements" to the Property, though the exact nature and extent of those activities has been concealed by Richard and Kant. Similarly, Richard and Kant have for a number of years deducted from Stephen's share of the profits "professional fees" and other charges without Stephen's knowledge or consent.

29.     Richard and Kant's conduct as aforesaid has caused a total cessation of any distribution of profits from the joint venture to Stephen, although in prior years Green Oaks typically generated after-tax profits in the $750,000 range and despite the fact that Stephen has to pay taxes on the profits "allocated" to him by the joint venture.

30.     Over the past year and a half, Stephen has made repeated efforts to obtain complete disclosure from Richard and Kant as to Green Oaks' operations and finances, including copies of all leases, and they have failed and refused to provide such information. Similarly, Stephen has made repeated attempts to reach agreement with Richard and Kant as to the management and continued operation of the joint venture, but the parties have been unable to reach any agreement and are hopelessly deadlocked as to the ongoing operation of the joint venture.

31.     Richard and Kant continue to deprive Stephen of his rights in the joint venture, they continue to siphon funds from the joint venture for their own benefit. and they continue to make and execute all decisions regarding the control and operation of Green Oaks joint venture without Stephen's knowledge or consent and in violation of his rights as a 50% owner of the Property.

## COUNT I:
## DISSOLUTION OF JOINT VENTURE

32.     Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 32 of this Count I.

33.     Upon information and belief, Richard and Kant, as members of the Green Oaks joint venture, contrary to the purpose and intent of the joint venture and without the knowledge or consent of Stephen, have wrongfully diverted the profits and income of the joint venture and applied those funds for their own personal use or the use of others who are not members of the joint venture.

34.     Furthermore, Richard and Kant have deprived Stephen of his rights in the joint venture and have failed and refused to allow Stephen to participate in its direction and control, contrary to the purpose, intent, and ownership rights of the joint venture.

35.     The actions of Richard and Kant as aforesaid have made it not reasonably practicable to carry on the business of the joint venture in conformity with the purpose and intent of the venture.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered against defendants Richard Robin and Eric Kant as follows:

A.     Adjudging and declaring a joint venture to have existed between Stephen Robin, Richard Robin, and Eric Kant as to the Green Oaks Shopping Center and the Property;

B.     Dissolving the joint venture between Stephen Robin, Richard Robin, and Eric Kant as to the Green Oaks Shopping Center and the Property;

C.     For an accounting by Richard Robin and Eric Kant of all dealings and transactions involving Green Oaks Shopping Center and the Property;

D.     Requiring the property of the joint venture, specifically including but not limited to the Property and all improvements thereon, to be sold and the proceeds thereof to be divided among Stephen Robin, Richard Robin, and Eric Kant according to their respective interests;

E.     For costs of this action;

F.     For such other and further relief as the Court deems just and proper.

## COUNT II:
## ACCOUNTING

36.     Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 36 of this Count II.

37.     Through the actions of Richard and Kant as aforesaid, Stephen's investment in and profits from Green Oaks and the Property have been inappropriately and wrongfully diverted to and commingled with the funds of Richard, Kant, the Robin Companies, and unknown others.

38.     Stephen is without an adequate remedy at law in that he has no access to the financial records and information that would disclose the amounts due and owing to him from the joint venture or that would reveal the amounts wrongfully diverted from the joint venture by Richard and Kant. Furthermore, insofar as Stephen has asserted claims of fraud and breach of fiduciary duty against Richard and Kant, he is entitled to an accounting of the funds that he has entrusted to Richard and Kant and to the profits that Richard and Kant have wrongfully diverted.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered against defendants Richard Robin and Eric Kant as follows:

A.     For an accounting by Richard Robin and Eric Kant of all dealings and transactions involving Green Oaks Shopping Center and the Property;

B.     Requiring the property and profits of Stephen Robin be returned to him and/or that the property of and revenues from the Green Oaks joint venture be returned to the joint venture for proper distribution among its members.

C.     For costs of this action;

D.     For such other and further relief as the Court deems just and proper.

## COUNT III:
## FRAUD

39.    Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 39 of this Count III.

40.    Notwithstanding their fiduciary relationship with and duties to Stephen as co-venturers in Green Oaks, Richard and Kant concealed certain material facts from Stephen regarding his investment in and profits from the Green Oaks joint venture. Specifically, Richard and Kant failed to disclose and intentionally concealed the fact that they were diverting Green Oaks revenues to themselves and one or both of the Robin Companies under the guise of charging the join venture "management fees" and "commissions" that constituted more than reimbursement of actual expenses. Furthermore, they failed to disclose their commitment of over one million dollars in joint venture funds towards alleged improvements to the Property, and failed to either advise Stephen or obtain his consent for that or other significant expenditures.

41.    Richard and Kant failed to disclose these facts to Stephen and concealed their actions from Stephen with the intent to mislead him, and as a consequence of and in reliance upon their wilful concealment, Stephen received and accepted distributions of income and profits that were significantly less than those to which he was entitled.

42.    As a direct and proximate result of Richard's and Kant's fraudulent concealment and omissions as aforesaid, Stephen has been and continues to be deprived of his rightful share of profits and income from the Green Oaks joint venture.

43.    In addition to being entitled to his proportionate share of all sums fraudulently diverted from the joint venture, Stephen is entitled to punitive damages based upon the wilful and wanton fraudulent conduct of Richard and Kant in order to punish these defendants for engaging in such conduct and deter future conduct of this type.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered in his favor and against defendants Richard Robin and Eric Kant, jointly and severally, for an amount in excess of $75,000 to be determined at trial, plus punitive damages, costs, and such other and further relief as the Court deems just and proper.

**COUNT IV:**
**BREACH OF FIDUCIARY DUTY**

44.     Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 44 of this Count IV.

45.     As members of the Green Oaks joint venture, Richard and Kant owed fiduciary duties of care and loyalty to Stephen as a fellow member of the venture.

46.     Furthermore, Shapiro, as the joint venture's accountant, was reposed with great faith, trust, and confidence as to the financial affairs of the venture and accordingly owed fiduciary duties to the venture and its members.

47.     Richard and Kant breached the fiduciary duties they owed to Stephen by diverting revenue from the joint venture and Stephen's share of profits to themselves and to Robin Realty without Stephen's knowledge or consent and by concealing this diversion through their failure and refusal to grant Steven access to the books and records of the joint venture.

48.     Shapiro breached his fiduciary duties to Stephen by failing and refusing to provide him with access to Green Oaks' financial information and failing and refusing to respond to inquiries by Stephen as to the venture's finances and Richard's and Kant's diversion of proceeds, despite his knowledge that Richard and Kant were concealing such information from Stephen. Shapiro's continued and ongoing refusal to provide such information prevented Stephen from discovering the diversion of proceeds and prolonged the fraudulent scheme of his co-venturers.

49.     As a direct and proximate result of Richard's, Kant's, and Shapiro's breaches of their fiduciary duties as aforesaid, Stephen has been and continues to be deprived of his rightful share of profits and income from the Green Oaks joint venture.

50.     In addition to being entitled to his proportionate share of all sums wrongfully diverted from the joint venture, Stephen is entitled to punitive damages based upon the wilful and wanton breaches of fiduciary duties of Richard, Kant, and Shapiro in order to punish these defendants for engaging in such conduct and deter future conduct of this type.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered in his favor and against defendants Richard Robin, Eric Kant, and Howard Shapiro, jointly and severally, for an amount in excess of $75,000 to be determined at trial, plus punitive damages, costs, and such other and further relief as the Court deems just and proper.

## COUNT V:
## PROFESSIONAL NEGLIGENCE

51.     Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 51 of this Count V.

52.     As the accountant retained by the joint venture and its members, Shapiro owed the joint venture and all of its members a duty to exercise reasonable and ordinary care in acting as their accountant.

53.     Shapiro failed to exercise reasonable and ordinary due care in acting as the joint venture's accountant. Specifically, Shapiro failed and refused to provide Stephen with access to Green Oaks' financial information and failed and refused to respond to inquiries by Stephen as to the venture's finances and Richard's and Kant's diversion of proceeds, despite his knowledge that Richard and Kant were concealing such information from Stephen. Shapiro's continued and ongoing refusal to provide such information prevented Stephen from discovering the diversion of proceeds and prolonged the fraudulent scheme of his co-venturers.

Doc#: 370314.1  12648/24371

-12-

54. Furthermore, Shapiro failed to act independently, without conflicts of interest and in his clients' best interests when providing accounting services for the joint venture and its members.

55. Stephen at all times acted with ordinary and due care.

56. As a direct and proximate result of the negligent acts and omissions of Shapiro as alleged above, Stephen has been injured and has suffered damage.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered in his favor and against defendant Howard Shapiro, for an amount in excess of $75,000 to be determined at trial, plus costs and such other and further relief as the Court deems just and proper.

## COUNT VI:
## CONSTRUCTIVE TRUST

57. Stephen repeats and realleges paragraphs 1-31 above as and for paragraph 57 of this Count VI.

58. As a result of the foregoing fraudulent acts and breaches of fiduciary duties, Stephen believes that his share of revenues and profits from the Green Oaks joint venture have been and continue to be wrongfully transferred to or commingled with the funds of Richard, Kant, one or both of the Robin Companies, and other unknown entities or individuals.

WHEREFORE, plaintiff Stephen Robin respectfully requests that a judgment be entered against defendants Richard Robin, Eric Kant, Robin Realty and Management Company, and Robin Construction Corporation as follows:

A. That they each be ordered to account to Stephen Robin for all transactions, distributions, charges, or transfers of funds relating to Green Oaks or the Property;

B. That the Court find and decree that any and all proceeds and profits obtained by Richard Robin, Eric Kant, Robin Realty and Management Company and/or Robin Construction Corporation, including but not limited to all rental income as it comes due, are held in a constructive trust for the benefit of Stephen Robin;

C.   For costs of this action;

D.   For such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

**STEPHEN H. ROBIN**

By: 

One of his Attorneys

James R. Pranger  (6191672)
David S. Argentar (6215710)
CHUHAK & TECSON, P.C.
30 South Wacker Drive, Suite 2600
Chicago, Illinois  60606-7413
(312) 444-9300

# ASSIGNMENT

Chicago, Illinois

EXECUTED IN QUADRUPLICATE

Dated: January 1, 1

FOR VALUE RECEIVED, I hereby sell, assign, transfer and set over unto _____

_____ STEPHEN H. ROBIN, an undivided 50% interest, and RICHARD J. ROBIN, _____

_____ an undivided 50% interest. _____

all my rights, powers, privileges and beneficial interest in and under that certain trust agreement

_____ 17th _____ day of _____ June _____, A.D., 19 58 , and known as The Cos

National Bank of Chicago Trust Number __ 7620 _____, including all interest of the un

in the property held subject to said trust agreement.

The power of direction under this trust assignment shall be exercised by STEPHEN H. ROBIN and RI

ROBIN, jointly, or ALBERT A. ROBIN, singly

ALBERT A. ROBIN

The signatures of all trust beneficiaries are subscribed
and sworn to before me by the above named, this
2nd day of _____,
19 84 .

NOTARY PUBLIC

7 OF 65     7/6     19 8

THIS IS TO CERTIFY THAT THE ABOVE AND
FOREGOING IS A TRUE AND CORRECT COPY OF
THE ORIGINAL NOW HELD IN OUR FILES.

COSMOPOLITAN BANK AND TRUST
BY:_____
LAND TRUST ADMINISTRATOR

## ACCEPTANCE

We accept the foregoing assignment subject to all provisions of said trust agreement, and s
Power of Direction as stated above.

_____ Address 1333 N. Wells St., Chicago, IL 60
STEPHEN H. ROBIN

_____ Address 1333 N. Wells St., Chicago, IL 60
RICHARD J. ROBIN

_____ Address _____

_____ Address _____

_____ Address _____

## TRUSTEE'S RECEIPT

THE COSMOPOLITAN NATIONAL BANK OF CHICAGO, as Trustee under its Trust Number 7

hereby acknowledges receipt of the foregoing assignment this 2nd day of April A.D. 19 84

As to the validity of the assignment and acceptance the trustee assumes no responsibility, nor fo
centage of interest, authenticity of signatures or sufficiency thereof.

APR 2 1984

CHICAGO, ILLINOIS

THE COSMOPOLITAN NATIONAL
OF CHICAGO, as Trustee as afore

By:_____
_____ President — _____Trust

(Note: This assignment should be executed in duplicate by both assignor and assignee and one
copy lodged with The Cosmopolitan National Bank of Chicago.)

FORM 8756

EXHIBIT A

# ASSIGNMENT

Chicago, Illinois

EXECUTED IN QUADRUPLICATE

Dated: January 1, 198

FOR VALUE RECEIVED I/We hereby sell, assign, transfer and set over unto _____

ERIC C. KANT, an undivided twenty-five (25%) percent interest in the ent

Trust corpus which is one-half of my fifty (50%) interest, of _____

_____

all my our/X rights, powers, privileges and beneficial interest in and under that certain trust agreement

_____17th_____ day of _____June_____, A.D., 19_58_, and known as The Cosi

National Bank of Chicago Trust Number_____7620_____, including all interest of the un

in the property held subject to said trust agreement.

The power of direction under this trust/assignment shall be exercised by STEPHEN H. ROBIN, RICH/

ROBIN, and ERIC C. KANT, jointly, or ALBERT A. ROBIN, singly, and this Assignm

subject to the Assignment given as Collateral Security to ALBERT A. ROBIN.

RICHARD J. ROBIN

The signatures of all trust beneficiaries are subscribed
and sworn to, before me by the above named this
____ day of _____
19____.

5 of 69    7/6  1900

_____
NOTARY PUBLIC

THIS IS TO CERTIFY THAT THE ABOVE AND
FOREGOING IS A TRUE AND CORRECT COPY OF
THE ORIGINAL NOW HELD IN OUR FILES.

COSMOPOLITAN BANK AND TRUST

APPROVED: _____
ALBERT A. ROBIN

BY: _____
LAND TRUST ADMINISTRATOR

## ACCEPTANCE

I/We accept the foregoing assignment subject to all provisions of said trust agreement, and s

Power of Direction as stated above.

_____
ERIC C. KANT

Address 1333 N. Wells St., Chicago, IL 60

_____ Address _____

_____ Address _____

_____ Address _____

_____ Address _____

## TRUSTEE'S RECEIPT

THE COSMOPOLITAN NATIONAL BANK OF CHICAGO, as Trustee under its Trust Number_____7

hereby acknowledges receipt of the foregoing assignment this _7th_ day of _May_ A.D. 19_84_

As to the validity of the assignment and acceptance the trustee assumes no responsibility, nor fo
centage of interest, authenticity of signatures or sufficiency thereof.

THE COSMOPOLITAN NATIONAL
OF CHICAGO, as Trustee as afores

By: _____
Assistant Vice President — Assistant Trust

(Note: This assignment should be executed in duplicate by both assignor and assignee and one
copy lodged with The Cosmopolitan National Bank of Chicago.)

FORM 2785

EXHIBIT B

**GREEN OAKS SHOPPING CENTER**
**FINANCIAL REPORT**
(A Tenancy in Common)
(COMPILED)
**DECEMBER 31, 2000**



EXHIBIT

_C_

# CONTENTS

| | |
|---|---|
| ACCOUNTANT'S REPORT | 1 |

**FINANCIAL STATEMENTS**

| | |
|---|---|
| Statements of assets, liabilities and owners' deficit – income tax basis | 2 |
| Statements of revenue and expenses – income tax basis | 3 |
| Statements of owners deficit – income tax basis | 4 |
| Statements of cash flows – income tax basis | 5 |

 **McGLADREY & PULLEN, LLP**
**Certified Public Accountants**

 **RSM**
International

## ACCOUNTANT'S REPORT

Green Oaks Shopping Center
Chicago, Illinois

We have compiled the accompanying statement of assets, liabilities and owners' deficit – income tax basis of Green Oaks Shopping Center (a Tenancy in Common) as of December 31, 2000, and the related income tax basis statements of revenue and expenses, owners' deficit and cash flows for the year then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The financial statements have been prepared on the basis of accounting used by the owners for federal income tax purposes, which is a comprehensive basis of accounting other than generally accepted accounting principles.

A compilation is limited to presenting in the form of financial statements information that is the representation of the owners. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

Management has elected to omit substantially all of the disclosures ordinarily included in financial statements prepared on the income tax basis of accounting. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the owners' assets, liabilities, deficit, revenue, expenses, and cash flows. Accordingly, these financial statements are not designed for those who are not informed about such matters.

The 1999 financial statements of the Company were compiled by Berg, DeMarco, Lewis, Sawatski & Co., whose partners merged with McGladrey & Pullen, LLP in 2000. Their report, dated March 27, 2000, stated they did not express an opinion or any other form of assurance on those statements.

We are not independent with respect to Green Oaks Shopping Center.

*McGladrey & Pullen, LLP*

Northbrook, Illinois
March 29, 2001

1

**GREEN OAKS SHOPPING CENTER**
**(A Tenancy in Common)**
**STATEMENTS OF REVENUE AND EXPENSES -**
 **INCOME TAX BASIS**
**Years Ended December 31, 2000 and 1999**
*See Accountant's Compilation Report*

|  | 2000 | 1999 |
|---|---|---|
| Revenue |  |  |
| Rental income, including real estate tax |  |  |
| assessments of $490,719 and $430,913 | $ 1,284,287 | $ 1,230,817 |
| Common area charges | 114,091 | 113,553 |
| Interest income | 6,828 | 3,772 |
| Recovery of bad debt | - | 71 |
| Miscellaneous income | 2,471 | 470 |
| **Total revenue** | 1,407,677 | 1,348,683 |
| Expenses |  |  |
| Depreciation | 8,974 | 8,974 |
| Amortization | 27,069 | 26,834 |
| Insurance | 11,457 | 10,167 |
| Interest | 133,550 | 283,774 |
| Professional fees | 14,098 | 11,977 |
| Management fees | 58,468 | 51,051 |
| Miscellaneous | 2,554 | 2,381 |
| Real estate taxes | 459,948 | 431,739 |
| Repairs and maintenance | 136,214 | 136,747 |
| Utilities | 4,410 | 10,459 |
| **Total expenses** | 856,742 | 974,103 |
| **Excess of Revenue Over Expenses** | $ 550,935 | $ 374,580 |

3

**GREEN OAKS SHOPPING CENTER**
**(A Tenancy in Common)**
**STATEMENTS OF CASH FLOWS -**
**INCOME TAX BASIS**
**Years Ended December 31, 2000 and 1999**
*See Accountant's Compilation Report*

| | 2000 | 1999 |
|---|---:|---:|
| Cash Flows From Operating Activities | | |
| Excess of revenue over expenses | $ 550,935 | $ 374,580 |
| Adjustments to Reconcile excess of revenue over | | |
| expenses net cash provided by operating activities | | |
| Depreciation | 8,974 | 8,974 |
| Amortization | 27,069 | 26,834 |
| Changes in assets and liabilities | | |
| Accounts receivable | (15,237) | (18,012) |
| Due to affiliate | 444,106 | (61,766) |
| Prepaid expenses | (335) | (956) |
| Accounts payable and accrued expenses | (97,790) | 4,335 |
| Security deposits | - | (562) |
| Net cash provided by operating activities | 917,722 | 333,427 |
| Cash Flows From Investing Activites | | |
| Expenditures for amortizable costs | (8,784) | (54,602) |
| Contribution to owners' equity * | 3,409,010 | - |
| Net cash provided (used in) investing activities | 3,400,226 | (54,602) |
| Cash Flows From Financing Activities | | |
| Distributions to owners | (512,500) | (150,000) |
| Payments on notes payable | (3,405,210) | (166.226) |
| Net cash used in financing activities | (3,917,710) | (316,226) |
| Net Increase (Decrease) in Cash | 400,238 | (37,401) |
| Cash, beginning | 5,257 | 42,658 |
| Cash, ending | $ 405,495 | $ 5,257 |
| Supplemental Disclosures of Cash Flow Information | | |
| Cash paid during the year for interest | $ 251,300 | $ 283,774 |

* Note: Total amount includes $1,363,970 which represents discount on notes payable during 2000.

5

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

STEPHEN H. ROBIN

### DEFENDANTS

RICHARD J. ROBIN; ERIC C. KANT; ROBIN REALTY AND MANAGEMENT COMPANY, an Illinois corporation; ROBIN CONSTRUCTION CORPORATION, an Illinois corporation; HOWARD SHAPIRO; and COSMOPOLITAN BANK AND TRUST COMPANY, as Trustee under Trust No. 7620

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___COOK___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___COOK___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James R. Pranger      Telephone: 312-444-9300
David S. Argentar
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606-7413

ATTORNEYS (IF KNOWN)

JUDGE GETTLEMAN

02C 8181

FILED-ED4
2002 NOV 12 PM 3: 16
CLERK DISTRICT COURT

MAGISTRATE JUDGE
GERALDINE SOAT BROW

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

DISSOLUTION OF JOINT VENTURE, ACCOUNTING, FRAUD, BREACH OF FIDUCIARY DUTY

DOCKETED
NOV 13 2002

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

Transferred from
Appeal to District

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
In Excess $75,000

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. REMARKS
In response to ☑ is not a refiling of a previously dismissed action
General Rule 2.21D(2) this case ☐ is a refiling of case number ___ of Judge ___

DATE
11-12-02

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# United States District Court

## FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

STEPHEN H. ROBIN,

                      Plaintiff,

      v.

RICHARD J. ROBIN, ERIC C. KANT,
ROBIN REALTY AND MANAGEMENT
COMPANY, an Illinois corporation,
ROBIN CONSTRUCTION CORPORATION,
an Illinois corporation, HOWARD SHAPIRO,
and COSMOPOLITAN BANK AND TRUST
COMPANY, as Trustee under Trust No. 7620,

                      Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§



02C 8181

No.

JUDGE GETTLEMAN

FILED-ED4
'02 NOV 12 PM 3:19
CLERK
U.S. DISTRICT COURT

DOCKETED
NOV 1 3 2002

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

*STEPHEN H. ROBIN (Plaintiff)*

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE | | SIGNATURE | |
| NAME | James R. Pranger | NAME | David S. Argentar |
| FIRM | CHUHAK & TECSON, P.C. | FIRM | CHUHAK & TECSON, P.C. |
| STREET ADDRESS | 30 South Wacker Drive, Suite 2600 | STREET ADDRESS | 30 South Wacker Drive, Suite 2600 |
| CITY/STATE/ZIP | Chicago, Illinois 60606-7413 | CITY/STATE/ZIP | Chicago, Illinois 60606-7413 |
| TELEPHONE NO. | (312) 444-9300 x4361 | TELEPHONE NO. | (312) 444-9300 x4621 |
| IDENTIFICATION NO. | 6191672 | IDENTIFICATION NO. | 6215710 |
| MEMBER OF TRIAL BAR? | Yes ☒   No ☐ | MEMBER OF TRIAL BAR? | Yes ☒   No ☐ |
| TRIAL ATTORNEY? | Yes ☒   No ☐ | TRIAL ATTORNEY? | Yes ☒   No ☐ |
| DESIGNATED AS LOCAL COUNSEL? Yes ☐ | No ☐ | DESIGNATED AS LOCAL COUNSEL? Yes ☐ | No ☐ |
| (C) | | (D) | |
| SIGNATURE | | SIGNATURE | |
| NAME | | NAME | |
| FIRM | | FIRM | |
| STREET ADDRESS | | STREET ADDRESS | |
| CITY/STATE/ZIP | | CITY/STATE/ZIP | |
| TELEPHONE NO. | | TELEPHONE NO. | |
| IDENTIFICATION NO. | | IDENTIFICATION NO. | |
| MEMBER OF TRIAL BAR? | Yes ☐   No ☐ | MEMBER OF TRIAL BAR? | Yes ☐   No ☐ |
| TRIAL ATTORNEY? | Yes ☐   No ☐ | TRIAL ATTORNEY? | Yes ☐   No ☐ |
| DESIGNATED AS LOCAL COUNSEL? Yes ☐ | No ☐ | DESIGNATED AS LOCAL COUNSEL? Yes ☐ | No ☐ |

*(Please complete in accordance with instructions on reverse).*

1-3