# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **02 C 8181** | **DATE** | May 5, 2004 |
| **CASE TITLE** | Stephen H. Robin   v     Richard J. Robin | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's objections to the Magistrate Judge's report and recommendations are overruled and defendants' motion to enforce the settlement agreement is granted. This action is dismissed with prejudice. Motion for a temporary restraining order is denied without prejudice as moot.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| X | No notices required, advised in open court. | | | **Document Number** | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAY – 7 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 52 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | IS | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| GDS | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

STEPHEN H. ROBIN, )
)
      Plaintiff, )
)
      v. )
)
RICHARD J. ROBIN, ERIC C. KANT, ROBIN )
REALTY AND MANAGEMENT COMPANY, an )
Illinois corporation, ROBIN CONSTRUCTION )
CORPORATION, an Illinois corporation and )
COSMOPOLITAN BANK & TRUST, )
)
      Defendants. )

No.    02 C 8181

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Defendants, Richard J. Robin, Eric C. Kant, Robin Realty and Management Company

and Robin Construction Corporation move to enforce a settlement agreement against plaintiff as

recommended by Magistrate Judge Geraldine Brown, Stephen H. Robin, and request that this

court dismiss plaintiff's claim with prejudice. Plaintiff contends that the settlement agreement is

not enforceable.[1] For the reasons set forth below, plaintiff's objections to Magistrate Judge

Brown's R&R are overruled and defendants' motion to enforce the settlement agreement is

granted.

### FACTS

The instant action arises from a dispute about a settlement agreement concerning the

management and future of Green Oaks Shopping Center ("Green Oaks") in Oak Lawn, Illinois.

Green Oaks was originally owned by Albert Robin, father of plaintiff Stephen Robin and

---

[1] Although the court set a briefing schedule that included a reply brief in support of
plaintiff's objections to the magistrate judge's report and recommendation ("R&R") no reply has
been filed.

defendant Richard Robin. Title to Green Oaks presently is held by a land trust, the beneficial interests in which are owned by Stephen Robin, Richard Robin and Eric Kant. On January 17, 2003, plaintiff filed a six count amended complaint against defendants premised on the existence of a joint venture among Stephen Robin, Richard Robin and Eric Kant. The alleged business of the venture is to own, operate and share in the profits from Green Oaks. Plaintiff's amended complaint alleges, among other things, that defendants have diverted funds from the joint venture and charged them as "management fees" and "commissions," and seeks the dissolution of the alleged joint venture, the sale of the shopping center, and a distribution of the proceeds that would account for the management fees and commissions. Defendants deny that there is a joint venture and deny that plaintiff is entitled to any fees paid to Robin Realty, the real estate firm operated by Richard Robin and Eric Kant that had managed Green Oaks for many years. Plaintiff contends that defendants agreed to pay him 50% of the management fees but have failed to do so for the years 2002 and 2003. Plaintiff cites no factual support for that statement, however, and such an agreement is not alleged in the amended complaint.

This case was initially referred to Magistrate Judge Brown for discovery supervision and a settlement conference. Prior to July 18, 2003, there was some discussion between the parties about whether the case could be settled by selling Green Oaks at a public auction.[2] The parties were scheduled to have a settlement conference by telephone with Magistrate Judge Brown on July 18, 2003 at noon. Approximately five minutes before the telephone settlement conference was to begin, Steven Baron ("Baron"), then counsel for plaintiff, telephoned Alan Rutkoff

---

[2]For a full recitation of the events leading to the ultimate settlement discussions of July 18, 2003, the court incorporates Magistrate Judge Brown's description from her R&R.

("Rutkoff"), counsel for defendants. During that conversation Baron proposed two settlement options. The first offer consisted of a sale of Green Oaks by a public, "absolute" auction;[3] defendants would pay all of the auction expenses, and plaintiff would release all his claims related to Green Oaks. The second offer also consisted of a sale of the property by a public, absolute auction, but included the conditions that each side pay half of the auction expenses and that plaintiff retain the right to litigate all his claims that would not be addressed by a sale of the property.[4]

After the telephone discussion between the attorneys, the telephone settlement conference including Magistrate Judge Brown proceeded. During the conference with Magistrate Judge Brown, Baron reiterated the two settlement options. Magistrate Judge Brown asked Baron why all of plaintiff's claims would not be settled by the auction contemplated by the second option. Baron responded that the amended complaint asserted damage claims for which plaintiff would not be paid from the proceeds of an auction, including, for example, claims for past management fees that were never paid to him. Rutkoff stated that he did not think his client would accept either proposal because defendants did not want either a partial resolution of the case or to pay plaintiff's share of the auction expenses.

On July 30, 2003, Rutkoff sent Baron a letter stating that defendants agreed unconditionally to the first settlement offer, and that consequently the lawsuit should be dismissed with prejudice. At a status hearing on August 4, 2003, Baron stated that he believed

---

[3]An "absolute" auction, according to a proposal submitted to the parties, has "no right of reservation on the part of the seller."

[4]Presumably, the proceeds would be divided *pro rata* among the beneficiaries of the land trust that held title to Green Oaks.

there was a "conceptual framework for settlement." Rutkoff commented that "the defendants' position is that the agreement to settle is more than in principal, that we do have a final and binding agreement." Magistrate Judge Brown concluded that "there may well be a binding and enforceable settlement at this point - - I am not going to opine on that point. But usually pieces of paper need to be exchanged in order to effectuate an agreement."

Between the status hearing on August 4 and the next status hearing on August 25, 2003, Rutkoff sent Baron a settlement agreement. Baron replied to the settlement agreement by letter, which identified a number of revisions, including payment of management fees to plaintiff for 2002 and 2003, contrary to the terms of the offer that was accepted by defendants. On August 25, 2003, another status hearing was held before Magistrate Judge Brown. At that status the issue of the management fees was raised once again. When the parties could not resolve the issue of the fees defendants brought this motion to enforce the settlement agreement, which Magistrate Judge Brown recommended be granted.

## DISCUSSION

A review of the report and recommendation of a magistrate judge that disposes of a party's claim is *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(B). A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id. see also Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999) (discussing the appropriate standard of review for a report and recommendation).

4

"A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Laserage Tech Corp. v. Laserage Lab Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (quoting *Air Line Stewards & Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983). Under Illinois law, an oral settlement agreement is enforceable "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995) (quoting *Brewer v. National R.R. Corp.*, 628 N.E.2d 331, 335 (Ill. 1993)). Illinois law follows the objective theory of intent; the parties must have a "meeting of the minds" by what they expressed to each other, not by their actual subjective intent. *Laserage Tech Corp.*, 972 F.2d at 802.

In addition, "a binding agreement requires a meeting of the minds or mutual assent as to all material terms." *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1992). Accordingly, "settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable." *Porter v. Chicago Bd. Of Educ.*, 981 F. Supp. 1129, 1131 n. 4 (N.D. Ill. 1997). Thus, "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken there is no contract." *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991). Under Illinois law, "[a] contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules or construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Id.* at 983.

Moreover, the fact that a formal written document is anticipated but then is never created or finalized does not preclude enforcement of a specific preliminary promise. *Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992). Thus, "a contract can be formed before there is an official document memorializing the deal." *Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1998 WL 299469 *4 (N.D. Ill. May 29, 1998). However, "[w]here the reduction of an agreement to writing and its formal execution is objectively intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon." *Trendmasters, Inc. v. Walgreen Co.*, No. 95 C. 5379, 1996 WL 422273 at *2 (N.D. Ill. July 24, 1996).

Defendants first assert that the offer made by Baron on July 18, 2003, which defendants accepted, included a release of plaintiff's claim for unpaid 2002 and 2003 management fees. According to defendants, the offers made during the July 18, 2003 telephone conference as follows:

> 1) "A sale of the property by a public, absolute auction; payment by defendants of all auction expenses; and a complete release by plaintiff of all claims against the defendants related to Green Oaks."

> 2) "A sale of the property by a public, absolute auction: payment [of] one-half of the auction expenses by plaintiff; payment of one-half of the auction expenses by the defendants; and the continuation of the Case for the purpose of allowing plaintiff to prosecute his monetary claims related to Green Oaks that, according to [Baron], would not be resolved by an auction of the property."

Defendants contend that the first offer included a release of *all* claims related to Green Oaks and did not carve out an exception for the unpaid management fees, as plaintiff claims. In support of that contention, defendants rely on the fact that, when asked by Magistrate Judge Brown to explain why all of plaintiff's claims would not be resolved by an auction of the

property pursuant to the second offer, Baron specifically referred to the claim for management fees as an example of the type of claim that would not be resolved under the second settlement option.

The only material difference between defendants' and plaintiff's version of the settlement offer is that plaintiff wants the word "retrospective" before the word "claims." Defendants contend that the retrospective claims include plaintiff's claim for unpaid management fees. The court, as did Magistrate Judge Brown, agrees with defendants that the parties' versions of the offers set forth by Mr. Baron at the July 18, 2003, conference are not materially different. Plaintiff provides no evidence that Baron "reserved" plaintiff's purported claim for management fees. By identifying the claim for management fees as the type of claim that would not be released under the second alternative, Baron communicated plaintiff's intention that the claim for management fees was, in his words, "retrospective" and would be released under the first alternative in exchange for defendants' bearing the expenses of the auction.

Defendants could not have known that plaintiff's first alternative did not include a release of the management fees along with all other claims against defendants because Baron never mentioned anything about it.[5] Further, this conclusion is in accordance with the recollection of Magistrate Judge Brown of the offers stated by Baron at the telephone conference. Accordingly, the court finds that the settlement offer accepted by defendants included a release of all claims related to Green Oaks and did not carve out an exception for plaintiff's claims for unpaid management fees.

---

[5]It is apparent to this court, having reviewed the record, that Baron was faithfully communicating his client's settlement proposals, and that plaintiff had an apparent change of heart after defendants unexpectedly accepted the first alternative.

Consequently, an enforceable agreement was reached. An unambiguous offer was tendered, an undisputed acceptance without any qualifications was made, and an intention to be bound was displayed by the parties. Plaintiff's response that an agreement was reached only "in principle," and that there was no meeting of the minds due to the issues left unresolved, is without merit. Contract terms cannot be based on the thoughts of one of the contracting parties that were never communicated to the other. *Laserage Tech. Corp.*, 972 F.2d at 802. The terms that were communicated here are the elements of the settlement agreement described above: an absolute auction to be paid for by defendants and a full release of all of plaintiff's claims regarding Green Oaks. Additional terms such as the timing of the auction and an interim operator of the shopping center were either agreed to later by the parties or are immaterial to the enforcement of the settlement agreement to terminate this litigation. Indeed, plaintiff's new attorney[6] admitted to Magistrate Judge Brown at a September 16, 2003, hearing that ". . . the case is settled in principle. . . . The *only* outstanding issue that we do not have an agreement on is past management fees." (Emphasis added.) Thus, the other issues plaintiff belatedly raised are, by plaintiff's own words, immaterial.

Moreover, as previously discussed, the anticipation of a written settlement agreement "does not preclude enforcement of a specific preliminary promise." *Dawson*, 977 F.2d at 374; *see also Porter*, 981 F. Supp. at 981 (finding that a binding agreement was reached because "[t]he subsequent drafting of the written documents was only to memorialize the terms of the oral agreement" and was not a "condition precedent" to the settlement agreement).

---

[6]Donald J. Kindwald substituted for Baron on September 12, 2003.

In plaintiff's objections to Magistrate Judge Brown's report and recommendation, plaintiff concedes that he never made a formal writing a condition precedent to the settlement agreement, but asserts that a written agreement must have been part of the settlement or else defendants would not have prepared a document. This argument begs the question: when the material terms of a settlement agreement have been reached, the common anticipation and preparation of a written document does not preclude enforcement of an oral agreement. *Dawson*, 977 F.2d at 374.

Finally, plaintiff's argument that the settlement agreement is unenforceable under the Statute of Frauds and that Baron lacked authority to convey the offer of settlement border on the frivolous. The court incorporates Magistrate Judge Brown's thorough discussion of these issues on pages 25 through 34 of her R&R.

## CONCLUSION

For the foregoing reasons, plaintiff's objections to Magistrate Judge Brown's R&R are overruled, and defendants' motion to enforce the settlement agreement is granted. The court declines to retain jurisdiction to enforce the terms of the agreement because such action by the court was not part of the settlement terms, and absent such agreement by both sides the court is without authority to retain jurisdiction to enforce the settlement. *See Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 397-98 (1994). The parties are therefore ordered to perform the terms of the settlement agreement specified above, and this action is dismissed with prejudice.

ENTER:     May 5, 2004

Robert W. Gettleman
United States District Judge

9